## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER DANIEL GAY,**<br>AIS #253514, | ) <br> ) <br> ) |
| **Plaintiff,** | ) **CIVIL ACTION NO: 2:07-CV-1012-MHT** |
| | ) |
| **v.** | ) <br> ) |
| **WINDOM MCGHEE, et al.** | ) <br> ) |
| **Defendants.** | ) |

## ANSWER
## And
## SPECIAL REPORT

Defendants file this, their Answer and Special Report, as directed by the Court.

## PETITIONER'S ALLEGATIONS

The Petitioner (Gay), is an inmate in the Alabama Department of Corrections, currently incarcerated at Draper Correctional Facility in Elmore County. He filed a complaint against multiple Alabama Department of Corrections (ADOC) employees based on allegations of wrong doing while at Red Eagle Honor Farm in Montgomery County, Alabama. He is apparently attempting to make allegations sounding in 42 U.S.C 1983.

Gay alleges the following three (3) counts:

COUNT ONE: Gay alleges a violation of his "due process rights", and his "8th Amendment rights" for what he says was a failure of the serving officer to "…complete item 5…" on the inmate disciplinary form #225B, which advised the inmate of a hearing for a rule violation.

COUNT TWO: Gay, a Caucasian male, lodges a "reverse" racial discrimination claim against officer Windom McGhee for making him pick up the cigarette butts for "…a line of black

1

inmates", and for allegedly calling him "…a stupid white son of a bitch…"

COUNT THREE: Gay's last count alleges a vague "violation of prisoner rights, being no grievance or complaint process." He does not assign a source of the alleged "prisoner rights" which he claims the ADOC defendants violated.

RELIEF REQUESTED: Gay files his complaint under the authority of 42 U.S.C. 1983, alleging constitutional violations while incarcerated at the Frank Lee Center of the Alabama Department of Corrections, but does not ask for money damages. Gay asks that the court order ADOC to:   1. remove the disciplinary from his file, 2. give him his "custody back", and 3. send him back to an honor camp.

### EVIDENTIARY SUBMISSIONS
### IN SUPPORT OF RESPONDENT'S SPECIAL REPORT

1. Affidavit Associate Commissioner James Deloach (Exhibit 1).

2. Affidavit Warden II Levan Thomas (Exhibit 2).

3. Affidavit Officer Windom McGhee (Exhibit 3).

4. Affidavit of Sergeant Dunnican (Exhibit 4).

5. Incident and Disciplinary Report for violation of Rule #62 or Regulation #403, which occurred on August 12, 2007 at the Frank Lee Work Release Center. (Exhibit 5).

### ANSWER

The Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2

3. The Defendants cannot be held liable on the basis of *respondeat superior*, agency, or vicarious liability theories.

4. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

5. The allegations contained in the Plaintiff's Complaint against the Defendants, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham*, 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Education Of Escambia County*, 880 F. 2d 305, 309 (11th Cir. 1989).

6. The Defendants plead all applicable immunities, including but not limited to sovereign, absolute, qualified, discretionary function, state-agent, and statutory law enforcement officer immunity.

7. All claims of the Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

8. The Defendants plead the affirmative defense of contributory negligence and assumption of the risk.

9. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e (a) and as such these claims should be dismissed.

10. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

11. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

Pursuant to 28 U.S.C. § 1915 A, this court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

## INVESTIGATIVE RESULTS

Defendant and now Associate Commissioner James DeLoach launched an investigation into the initial due process complaint of Gay concerning the disciplinary hearing because Gay was caught hiding dyed prison pants. His investigation revealed that there was sufficient evidence to support the finding in Gay's disciplinary hearing, and that Gay was afforded all due process rights that he was entitled to. (Exhibit 1).

Additionally, DeLoach states under oath that the Alabama Department of Corrections does not have an "official" inmate "grievance\complaint" process. But, he goes on to state further, correctly, that the law does not require an inmate grievance process. Associate Commissioner DeLoach staes further that even though there is not an official grievance procedure; inmates are free to air any complaints that they have by contacting his or her warden, the Institutional coordinator, Associate Commissioner or the Commissioner. (Exhibit 1).

Defendant Warden Levan Thomas testifies by affidavit that at no time did Gay ever advise him of any problem he may have been having with Officer McGhee. A week before Gay's dyed prison pants were discovered hidden in a mop bucket, Gay was given permission to use a facility telephone to call his family concerning an ill child. (Exhibit 2).

When Warden Thomas learned of the discovery of a pair of Gay's prison pants which were dyed and hidden in a mop bucket, which posed an obvious escape threat, Warden Thomas ordered Gay's immediate transfer away from the Frank Lee facility, to a more secure facility. (Exhibit 2).

4

In response to Gay's claim of a denial of due process because of an alleged incomplete line #5 on his disciplinary hearing report, Warden Thomas states that in fact Gay signed his own name and AIS # on Line 5, indicating he received the form on August 18, 2007. Warden states further that Line #5 was completed when served on inmate Gay. (Exhibit 2).

Defendant Officer Windom McGhee states in his affidavit that until he discovered the dyed prison pants hidden in a mop bucket, he (McGhee) did not even know who Gay was. (Exhibit 3). He states further that his only involvement with Gay was the fact that McGhee was the officer who found the dyed pants and turned them over to his supervisor, Defendant Sergeant Tracy Dunnican. (Exhibit 3). Sergeant Dunnican later instructed Officer McGhee to collect Gay's property for transfer to another facility.  McGhee denies being racial or threatening toward to Gay. (Exhibit 3).

Defendant Sergeant Tracy Dunnican stated by affidavit that she was the Shift Commander on August 12, 2007, when Officer McGhee brought a pair of prison inmate pants to her that appeared to have been dyed in kool-aid. The dyed pants had the inmate #38 stamped on them, which was inmate Gay's number. The pants were found outside the exit kitchen door, which posed an obvious escape possibility. (Exhibit 4).

Sergeant Dunnican contacted Warden Thomas of the dyed pants situation. She states that Warden Thomas advised her to arrange to transfer Gay to Draper Correctional Facility. (Exhibit 4).

## ARGUMENT

Gay does not, with any specificity whatsoever, allege any actions or inaction on the part of these Defendants which would subject them to liability under 42 U.S.C. Section 1983.

Based on the above evidentiary submissions of Respondents, there simply is no factual

basis to any of Gay's claims. Gay offers nothing but speculative and unsubstantiated assertions. The burden is on the petitioner to come forward with more than mere speculation and accusatory innuendo. The mere quoting of "legal terms" is not sufficient to support 1983 claims. Gay has completely failed to meet his burden, and Respondents are entitled to a dismissal of all of Gay's claims, and for costs and other appropriate sanctions to be assessed against Gay for his completely frivolous and factually and legally baseless petition.

Even though Gay does not pray for monetary relief, he has raised his claims under the authority of Section 1983. Since a finding of a constitutional violation under 1983 carries with it money damages and attorney fees, Defendants have raised heretofore, and argue below the full defenses available to them.

### *OFFICIAL CAPACITY*

Defendants argue that each ADOC defendant is sued in his or her official capacity, **only**. Gay has failed to allege, and offers no evidence, that any defendant has acted in his individual capacity to harm Gay.

Gay's complaint makes broad brush allegations against Alabama Department of Corrections employees. All claims asserted by inmate Gay arise out of their official duties, and in their official capacities as employees of the Department of Corrections. Gay makes no reference whatsoever to any defendant being sued in his individual capacity.

Therefore, defendants argue that they are entitled to 11th Amendment\Sovereign Immunity, and offer the following as authority.

### *11th Amendment Immunity / Sovereign Immunity*

Gay's federal claims under 42 U.S.C., Section 1983 against these defendants in their official capacity, are barred by the 11th Amendment to the United States Constitution. Therefore,

6

the plaintiff's claims against these defendants under Section 1983 are due to be dismissed as a matter of law for lack of subject matter jurisdiction. The 11th Amendment to the U.S. Constitution bars the federal court from exercising jurisdiction over states. Ex Parte Young, 209 U.S. 123.

Claims against the State of Alabama and its agencies, officers and agents, under Section 1983, are barred by the 11th Amendment to the United States Constitution. Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989); see also Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992).

The 11th Amendment to the Constitution of the United States of America bars any claims, including any and all pendente state law claims, against a state or its officials in the absence of the consent of the state. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99-100 (1984) (wherein the Supreme Court of the United States held that the 11th Amendment barred any and all state law claims brought in U.S. District Court under pendente jurisdiction, as well as under Section 1983.) Gay has failed to allege, and he offers no evidence whatsoever that there has been a waiver of the State of Alabama's 11th Amendment immunity in this case. Therefore, his claims against these defendants in their official capacity are all barred for lack of subject matter jurisdiction.

The State of Alabama and all of its services must operate through its agencies, officers and employees. The courts are firm in their holdings that state agencies, officers and employees are absolutely immune from tort liability. Rutledge v. Baldwin Co. Commission, 495 So.2d 49 (Ala. 1986).

The State of Alabama, its agencies, officers and employees, in their official capacities and individually, are absolutely immune from suit. These defendants, as officers, employees and agents of the Alabama Department of Corrections, are entitled to invoke sovereign immunity from suit even though there may be some individual officials named as nominal defendants in the suit.

See Destafney v. University of Alabama, 413 So.2d 391 (Ala. 1981).

## *INDIVIDUAL CAPACITY*

To the extent that the court chooses to treat Gays' complaint as being an "individual capacity" suit, defendants add the following arguments and authorities.

### *Heightened Pleading Requirement*

It should first be noted that a plaintiff's pleading standard is elevated and "heightened" when claims are made against government officials. The Eleventh Circuit has made it clear:

> Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right. Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.

G. J. R. Investments, Inc. v. Escambia, Florida, 132 F.3d 1359, 1367 (11th Cir. 1998). In the instant case, plaintiff's allegations against Defendants are conclusory at best and they do not provide a basis for determining what, if any, constitutional violation is alleged against which defendant, or exactly what each defendant is accused of doing or failing to do. The plaintiff has thus failed to meet the mandated "heightened pleading" requirement for a 1983 action.

### *Respondeat Superior*

Except for, perhaps, Officer McGhee, the claims asserted against these defendants are clearly predicated on the doctrine of ***respondeat superior*** and such liability does not exist. Monell v. New York City Dept. Of Social Services, 43 U.S. 658, 98 S.Ct. 2018, 67 L.Ed. 611 (1978); Smith V. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). The theory **of *vicarious liability* or *respondeat superior***, is unavailable under Section 1983. Farrow v. West 320 F3d. 1235 (11thCir.2003).

### ARTICLE V
### Executive Officer Immunity

Under Article V, Section 112 of the Alabama constitution, defendants are executive

officers of the State of Alabama. *See*, Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116

L.Ed.2d 301 (1991)  Defendants are shielded from suit, whether individually or in their official

capacity, as an executive officer of the State of Alabama, including any constitutional claims, by

Article I, Section 14 of the Alabama Constitution. *See*, Alabama State Docks v. Saxon, 631 So.2d

943, 946 (1994)("[Under] Article I, § 14, Alabama Constitution ... [s]tate officers and employees,

in their official capacities and individually, also are absolutely immune from suit when the action

is, in effect, one against the state."). This immunity extends to all the state law claims asserted by

the plaintiff. Alexander v. Hatfield, 652 So.2d 1142, 1143 (Ala. 1994). *Cf.*, Tinney v. Shores, 77

F.3d 378, 383 (11th Cir. 1986) ("Under Alabama law, both sheriffs and deputy sheriffs are

considered executive officers of the state, immune from suit under Section 14 . . . Alabama

intended for its state officers to be immune from suit.").

### Qualified Immunity

These defendants are entitled to qualified immunity.

Plaintiff has failed to produce any legal authority which makes it obvious to all reasonable

government actors in the defendant's shoes that "what he is doing violates federal law." *See*,

Lassiter v. Alabama A & M Univ. Bd. Of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994).

("Qualified immunity protects government officials performing discretionary functions from civil

trials (and the other burdens of litigation, including discovery) and from liability if their conduct

violates no "clearly established statutory or constitutional rights of which a reasonable person

would have known.") *quoting*, Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73

L.Ed.2d 396 (1982); Siegert v. Gilley, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). "A plaintiff cannot avoid the qualified immunity defense 'by referring to general rules and to the violation of abstract 'rights'.'" Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001). Plaintiff's reliance on Marsh v. Butler County, Alabama, 268 F.3d 1014 (11th Cir. 2001), is misplaced inasmuch as the case dictates:

> Once the affirmative defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit. **"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."** Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.' ").

268 F.3d at 1022.

## COUNT ONE

## DUE PROCESS and 8th AMENDMENT

Gay attempts to claim that he was denied "due process" in conjunction with the handling of his disciplinary hearing. He argues that Item 5 on the Disciplinary Report was not completed, violating his rights to due process. This allegation is unfounded. The contrary to Gay's claims, the "line 5" of the disciplinary report was signed by Gay himself. (Exhibits 3 & 5). But even if "line 5" was not completed, that does not constitute a denial of his due process rights.

An inmate facing a disciplinary proceeding is entitled to notice of the claimed violations, and the inmate has the right to call witnesses and to present documentary evidence in his behalf and to receive a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. Baskin v. State, 856 So.2d 951, 953 (Ala. Crim. App. 2003); citing Wolff v. McDonnell, 418 U.S. 539, 563 (1974); Brown v. State, 592 So.2d 621, 623 (Ala. 1991);

*Hearin v. State*, 741 So.2d 553, 554 (Ala. Crim. App. 1991).

The *Baskin* Court also held that [d]ue process mandates that a state disciplinary board or a hearing officer cannot make a decision arbitrarily or capriciously, but must be based upon some evidence. Also, a written copy of the decision setting out what the decision was and what evidence was relied upon to support the decision must be provided to the inmate. *Baskin* at 954; citing *Superintendent, Massachusetts Correctional Institutions, Walpole v. Hill*, 472 U.S. 445 (1985); *Heidelberg v. State*, 522 So.2d 337 (Ala. Crim. App. 1988).

The Administrative Regulation 403 ("AR 403"), Disciplinary Hearing Procedures For Major Rule Violations, was followed. The Alabama Department of Corrections conducted a fair hearing that was based on substantial evidence. The Petitioner was notified of the hearing. The Arresting Officer presented substantial evidence. The Petitioner was afforded the opportunity to pose questions to all witnesses. The Petitioner was allowed to designate witnesses of his own choosing.

Considering the testimony and evidence given, the Hearing Officer found that the Petitioner was guilty, which was substantiated by said testimony and evidence. Gay's claim is without merit.

Gay listed his witnesses to be called. Gay was allowed to question the witnesses. Gay was afforded the opportunity to testify. AR 403 was complied with and Gay's claims are without merit.

## 8*th* AMENDMENT CRUEL and UNUSUAL PUNISHMENT

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)).

While [t]he Constitution does not mandate comfortable prisons, it does not permit inhumane ones ( Id.) (internal citations omitted). The Eighth Amendment requires prison officials to provide humane conditions of confinement; and ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmate.( Id.) (quoting Hudson v. Palmer, 468 U.S. 517, 526-57 (1984)). "To establish a viable eighth amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering or was totally without penological justification." (Id.)

Not every governmental action affecting the interest or well-bring of a prisoner is to be scrutinized by the courts; rather, [a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670 (1977)) (internal quotation marks omitted).

A negligent act or omission will not support a claim under Section 1983. *Ray v. Foltz* 2004 WL 1144698 (11th.Cir. May 24, 2004). See also *Taylor v. Ledbetter*, 818 F2d. 791, 794 (11th.Cir. 1987).

It is deliberateness and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring control over a tumultuous cellblock. *Taylor*, supra.

## COUNT TWO

## REVERSE RACIAL DISCRIMINATION

To establish a claim under the Equal Protection Clause, Gay must show that he is situated similarly to other persons who were treated differently than he, and (2) that the reason for the differential treatment was based on race or some other constitutionally protected interest. *Damiano*

*v. Florida Parole and Probation Commission*, 785 F.2d 929 (11th Cir. 1986). Gay must also prove discriminatory intent, purpose or motive. *Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 256 (1977); E & T Realty v. Strickland, 830 F.2d 1107 (11th Cir. 1987).

A claim of racial discrimination involving an inmate requires exceptionally clear proof of racial discrimination on the part of prison officials.

These Defendants argue that Gay fails to meet his burden to support a claim of racial discrimination.

## COUNT THREE

### VIOLATION OF PRISONER RIGHTS

There is no constitutional "right" to a prisoner "…grievance of complaint process." There is no such statutory "right." An inmate grievance system is not constitutionally required. *Spencer v. Moore*, 638 F.Supp. 315 (E.D. Mo 1986).  Inmates are not prohibited from asserting any and all grievances or complaints they may have by contacting the chain of command set out by Defendant Associate Commissioner DeLoach (Exhibit 1), or through their access to the court system, as is evidenced by this lawsuit.

### DEMANDS TO BE RE-CLASSIFIED
### And
### RE-ASSIGNED TO AN HONOR FACILITY

Although Gay sets out in his three (3) counts what he avers are constitutional violations, the relief asked for is strictly injunctive or asserting a baseless claim of having a liberty interest in his classification and facility assignment. He wants his previous custody classification restored, and he wants the court to compel the ADOC to send him back to an honor farm.

A prison inmate has no constitutionally protected right to any particular classification or

assignment to any particular corrections department facility.

## CLASSIFICATION

The loss of privileges and referral for more restrictive custody classification "though concededly punitive, do[es] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. S*andlin v. Conner,* 515 U.S. 472, 483-484 (1995).

Prison inmates have no due process rights directly under the constitution to any particular classification. In <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) the Supreme Court stated:

> "[A]s long as the condition or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the constitution; the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."

459 U.S. at 468.

Similarly, in <u>Meachum v. Fano</u>, 427 U.S. 215, 225 the Court concluded that:

> "[T]o hold...that <u>any</u> substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."

427 U.S. at 225.

## CONCLUSION

Inmate Gay fails to assert and support any act or omission on the part of any defendant which rises to the level of a constitutional violation.

Respectfully submitted,

/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

14

**ADDRESS OF COUNSEL:**

Alabama Department of Corrections
Legal Division
Post Office Box 301501
301 South Ripley Street
Montgomery, AL   36130-1501
(334)353-3889

## CERTIFICATE OF SERVICE

I do hereby certify that on the 27th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

And I hereby certify that I have mailed a copy of the forgoing via United States Mail properly addressed, postage prepaid first class to:

Christopher Daniel Gay, AIS # 253514
Frank Lee Youth Facility
P. O. Box 220410
Deatsville, AL 36022

/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

15

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTOPHER DANIEL GAY,    )
AIS #253514,    )
    )
        Plaintiff,    ) CIVIL ACTION NO: 2:07-CV-1012-MHT
    )
    v.    )
    )
WINDOM MCGHEE, et al.    )
    )
        Defendants.    )

## AFFIDAVIT

**STATE OF ALABAMA**    )
    )
**MONTGOMERY**    )

Before me, the undersigned authority, personally came and appeared James H. DeLoach, Associate Commissioner of the Alabama Department of Corrections, and does state under oath as follows:

My name is James H. DeLoach.  I am an Associate Commissioner for the Alabama Department of Corrections and work out of the main office in Montgomery, Alabama.

In the performance of my duties as Associate Commissioner for the Alabama Department of Corrections, and in response to a letter written by the Plaintiff, I did inquire into the circumstances of the disciplinary he received on August 13, 2007.

I determined that there was sufficient evidence to charge this Plaintiff with violating AR 403, rule #62.  I also reviewed the disciplinary and found that all due process requirements were met.

DEFENDANT'S
EXHIBIT
1

Blumberg No. 5114

As to this Plaintiff's claims that his prisoner rights were violated because there is no grievance procedure for inmate procedure for inmates, this is not a right for which inmates are entitled. There is no grievance procedure available for inmates and it is not constitutionally mandated. The procedure available to inmate to air complaints is to write his/her Warden, Institutional Coordinator, Associate Commissioner for Operations or the Commissioner.

In this case inmate Gay addressed his complaint to Commissioner Richard Allen, who referred the complaint to me for inquiry. I immediately contacted Warden Thomas at Frank Lee regarding inmate Gay's claims. Upon hearing the basis for the disciplinary charge that was brought against the inmate it was my finding that the disciplinary was warranted.

The Plaintiff's claims that I violated his constitutional rights are without merit.

James H. DeLoach

SWORN TO AND SUBSCRIBED
before me on this the _26th_ day of December, 2007.

Sandra M. McLure
Notary Public
State of Alabama At-Large

My Commission Expires:

_3/27/2011_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Christopher Gay, #253514 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-1012-MHT |
| | ) | |
| Levan Thomas, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Levan Thomas, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Levan Thomas and I am presently employed as a Warden II with the Department of Corrections, Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

In inmate Gay's complaint, he alleges that he apprised me of a problem that he was having with Officer Windom McGhee who allegedly singled him out among other inmates and made him pick up cigarette butts. At no time did inmate Gay ever mention anything to me concerning a situation between he and Officer McGhee. A week prior to the incident that led to inmate Gay's transfer from Frank Lee, he approached me concerning his child being hospitalized and stated that he was unable to communicate with his wife due to her having a cell phone. Due to not being able to contact his wife through the inmate phone system, I allowed him to use the state line to call his wife. He further asked me to grant him a pass to go and visit his child in the hospital. Knowing the aforementioned information concerning inmate Gay, on 8/12/07 when I got the information concerning the dyed pants (potential escape device) bearing inmate Gay's laundry number, I immediately had him transfer from Frank Lee until I could investigate into the incident. Further investigation reveal that the dyed pants did contain inmate Gay's laundry number. The pants were discovered in the kitchen mop area where inmate Gay was assigned to work. Inmate Gay further alleges that when he was served his copy of the disciplinary report, line #5 was incomplete.

DEFENDANT'S
EXHIBIT
2
Blumberg No. 5114

The disciplinary report further reflect that inmate Gay did signed his name and AIS# on line #5 certifying that he received the report on August 16, 2007 and was given the opportunity to list his witnesses. This further substantiate that line #5 was completed when being served on inmate Gay.

Levan Thomas, Warden II

STATE OF ALABAMA)
ELMORE COUNTY    )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND OFFICIAL SEAL THIS, THE ___10th___ DAY OF __December__, 2007.

Notary Public

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Christopher Gay, #253514   )
          )
  Plaintiff,     )
          )
   v.      )  CIVIL ACTION NO. 2:07-CV-1012-MHT
          )
Windom McGhee, et al.,   )
          )
  Defendants,    )

AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Windom McGhee, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Windom McGhee and I am presently employed as a Correctional Officer with the Department of Corrections, Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

This statement is to reply to a lawsuit filed by inmate Christopher Gay. Inmate Gay stated that I was racial toward him. This statement is not true. Inmate Gay also stated that I threatened him. This statement is not true. After reading the lawsuit, I understand that these false statements came from disciplinary actions he received from a pair of state white pants I had found when I was checking the storage area behind the kitchen where the mop buckets are stored. I found a pair of state white pants that had been dyed. I took the pants to the shift office to Sgt. Dunnican. After an hour or so passed, Sgt. Dunnican instructed me via radio to report back to the shift office. Sgt. Dunnican instructed me to pack up inmate Christopher Gay's property. I asked who is Christopher Gay? She said the one who works in the kitchen, that's the pants you found. I did not know who Christopher Gay was prior to this time.

*Windom McGhee C.O*
Windom McGhee. Correctional Officer



DEFENDANT'S
EXHIBIT
3

STATE OF ALABAMA)
ELMORE COUNTY   )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND
OFFICIAL SEAL THIS, THE  _*17th*_  DAY OF  _December_  , 2007.

_Kimberly M. Higgins_
Notary Public

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Christopher Gay, #253514     )
    )
    Plaintiff,     )
    )
    v.     )    CIVIL ACTION NO. 2:07-CV-1012-MHT
    )
Tracy Dunnican, et al.,     )
    )
    Defendants,     )

AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Tracy Dunnnican, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Tracy Dunnican and I am presently employed as a Correctional Sergeant with the Department of Corrections, Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

On August 12, 2007 I, Sgt. Tracy Dunnican, was the acting Shift Commander on 2nd shift. At approximately 6:00 PM CO W. R. McGhee entered the Shift Office with a pair of state pants, size 34 and laundry #38 stamped on them. The pants appeared to have been soaked in kool-aid, because they had a bluish red tint color. I, Sgt. Dunnican, investigated the situation and discovered that laundry #38 is issued to inmate Christopher Gay W/M 253514. When I questioned inmate Gay about the pants he seemed very nervous at the time. Inmate Gay denied ownership of the pants. One day prior, inmate Gay was very upset about his infant child, who was sick and hospitalized since birth. The pants were found outside the exit kitchen door inside the mop storage area. At approximately 6:55 PM I, Sgt. Dunnican, contacted Warden Levan Thomas and advised him of the incident with inmate Gay. Warden Thomas gave the approval to transfer inmate Gay to Draper Correctional Facility.



DEFENDANT'S EXHIBIT
4
Blumberg No. 5114

_Tracy Dunnican, Correctional Sergeant_

STATE OF ALABAMA)
ELMORE COUNTY    )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND
OFFICIAL SEAL THIS, THE ___12th___ DAY OF _December_____, 2007.

_Kimberly M. Higgins_
Notary Public

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1.                      Institution: | **2. Date:** | 3. Time: | 4. Incident Number: | Class Code: |
|---|---|---|---|---|
| **Frank Lee Youth Center** | 08/12/2007 | 5:45 p.m. | FLYC 07-*408* | C |

| 5. Location Where Incident Occurred: | 6. Type of Incident: #62 Intentionally Creating a |
|---|---|
| Mop Storage Area (Kitchen Exit Door) | Security, Safety or Health Hazard |

| 7. Time Incident Reported: | 8. Who Received Report: *Tracy Dunnican, Corr. Sgt.* |
|---|---|
| 6:00 p.m. | Correctional Sergeant Tracy Dunnican |

| 9. Victims:              Name | | AIS |
|---|---|---|
| a. | N/A | No. |
| b. | | No. |
| c. | | No. |

| 10. Suspects:    Name | AIS | | 11. Witnesses:     Name | AIS |
|---|---|---|---|---|
| a  Gay, Christopher | No.  W/253514 | | a  N/A | No. |
| b | No. | | b | No. |
| c | No. | | c | No. |
| d | No. | | d | No. |
| e | No. | | e | No. |
| | | | f | No. |
| | | | g | No. |

**PHYSICAL EVIDENCE:**

12. Type of Evidence
   1 Pair of State Pants

13. Description of Evidence:
   Appear to have been soaked in kool-aid (reddish/blue tint)
   Size - 34 pants with laundry #038, which was marked out

14. Chain of Evidence:
a   Mop bucket
b   Officer Windom McGhee
c   Shift office filing cabinet
d   Evidence box
e

15. Narrative Summary:
   On August 12, 2007 at approximately 5:45pm, CO W McGhee discovered a pair of state pants inside a mop bucket located inside the mop storage area. The state pants that were previously white were colored with a reddish/blue colored tint. After a further search, Officer McGhee found no other contraband. At approximately 6:00pm, Officer McGhee placed the pants inside a black garbage bag and reported the discovery of the pants to Sgt. Tracy Dunnican. After further investigation, Sgt. Dunnican discovered laundry #038, which was marked out on the pants, belonged to inmate Christoper Gay WM/253514.  Inmate Gay was paged to the Security Office for questioning about the pants. Sgt. Dunnican noticed that inmate Gay appeared to be very nervous and distraught. CO Edward Easterling restrained inmate Gay for security reasons. During questioning, inmate Gay stated, "I have all of my state pants, these pants do not belong to me." At approximately 6:55pm,  Sgt. Dunnican contacted Warden Levan Thomas and advised of this incident with inmate Gay. Warden Thomas advised Sgt.Dunnican to inform the on call duty Officer,Capt.DannyAvant of this incident.

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
            COPY to Institutional File                                                    COPY to Central Records Office

ADOC Form 302-A – June 1, 2005



DEFENDANT'S EXHIBIT 5

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLYC 07-** 408 | C |
| Date: 08/12/07 | Type of Incident: #62 | |

Narrative Summary (Continued) Page No. 2

At approximately 7:05 p.m., Sgt Dunnican informed Capt. Avant of this incident. Capt. Avant gave approval for inmate Gay to be transferred to Draper CC. At approximately 8:10pm, CO McGhee transported inmate Gay to Staton HCU for a body chart. (See Attached Body Chart) At approximately 8:50pm, CO McGhee transported inmate Gay to Draper CC. FLYC count stands at: WM 98 + BM 189 = 287 present and assigned. At approximately 9:00 p.m., CO McGhee returned to FLYC. On 08/13/07, the pants were place the evidence box .No further actions taken at this time.

Windom McGhee, CO  *Windom R. McGhee*

I certify that these are true copies of the Incident Report and Disciplinary.

STATE OF ALABAMA)
Elmore County)

Levan Thomas, Warden II

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND AND OFFICIAL SEAL
THIS, THE *11th* DAY OF *December* , 2007.

*Kimberly M. Higgins*
Notary Public

**ADOC Form 302-B – June 1, 2005**



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME ☐ AM ☐ PM | ORIGINATING FACILITY Fylc ☐ SIR ☐ PDL ☐ ESCAPEE | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |
|---|---|---|---|
| 8 /12/ 07 | | | |

| ALLERGIES Tyknol PVK | C2 SAt 96% | CONDITION ON ADMISSION ☑GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA |
|---|---|---|

VITAL SIGNS: TEMP. 98.4  (ORAL/RECTAL)  RESP. 18  PULSE 82  B/P 100/60  RECHECK IF SYSTOLIC <100> 50 _____

| NATURE OF INJURY OR ILLNESS | | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|---|

S. Body Chart per Doc) Stated he was out in the yard. stated they found a pair of pants w/ his your # on it. Denies any pain or discomfort. Stated he has no injury. Suts will be placed in lock up per DC.

PROFILE RIGHT OR LEFT

PHYSICAL EXAMINATION

O. Alert & Oriented x 3. Skin warm & dry touch. Resp. c ease. Ø complaints voiced c no apparent distress noted. At this time. Ø visible injury noted. Alteration & comfort - Body Chart per Doc

RIGHT OR LEFT

Plan. Body Chart per Doc.

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

DIAGNOSIS

INSTRUCTIONS TO PATIENT

Body Chart per Doc

| DISCHARGE DATE 8 /12/ 07 | TIME 8:50 AM/PM | RELEASE / TRANSFERRED TO ☐DOC ☐AMBULANCE ☐ | CONDITION ON DISCHARGE ☑SATISFACTORY ☐POOR ☐FAIR ☐CRITICAL |
|---|---|---|---|
| NURSE'S SIGNATURE D. Woodmigin | DATE 8-12-07 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) Gay Christopher | DOC# 253514 | DOB 5-28-74 | R/S W/M | FAC. Fylc |
|---|---|---|---|---|

PHS-MD-70007



ALDOC Form 225B

## ALABAMA DEPARTMENT OF CORRECTIONS
### DISCIPLINARY REPORT

*FLYC 07-408*

1. Inmate: __Gay, Christopher__      Custody: __MIN__      AIS: __W/253514__

2. Facility: __FRANK LEE YOUTH CENTER__

3. The above named inmate is being charged by __Windom McGhee, CO__ with violation of rule number __# 62__ specifically __Intentionally Creating a Security, Safety or Health Hazard__ from regulation # __403__ which occurred on or about __08/12/2007__, 2007 at (time) __5:45PM__ (am / pm),  Location: __mop storage area__ . A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: __On 8/12/07 you, inmate Christopher Gay W/253514 did have a pair state pants with your laundry #038 with a reddish/ blue tint in a mop bucket in the mop storage area outside of the kitchen rear exit door.__

   *Windom L McGhee*
   __Windom McGhee, CO__

   *13 Aug. 07*
   _____
   Date                     Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the __16th__ day of __August__, 2007, at (time) __8³/pm__ (am/pm).

   _____            + _Chi D. Gay_  253514
   Serving Officer / Signature / Rank      Inmate's Signature / AIS Number

6. Witnesses desired?      NO _____      YES x_Chi D. Gay_____
                              Inmate's Signature                Inmate's Signature

7. If yes, list: __CO McMann__

8. Hearing Date __08-22-07__      Time __8:25 pm__      Place _D.2 April SHA off.ce_

9. Inmate must be present in Hearing Room.  If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is / is not) capable of representing himself.
    _____
    Signature / Hearing Officer

11. Plea: _Chi D. Gay_  (Not Guilty) _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _____
    Signature / Hearing Officer

    **ENTERED**
    8-27-07
    BQ

Annex C to AR 403  (Page 1 of 5)

*FLYC 07-408*

3. Arresting Officer's testimony (at the hearing):    On the date and time in question, I found a pair of state issued pants, soaking in a mop bucket in the Kitchen. The pants had the laundry #038 on them. I appeared that the pants were being dyed to change the color of them. The pants belonged to inmate Gay, who is assigned to the Kitchen. I can't say he was going to wear them or not, but it appeared as if he was dying them so he could perhaps escape.

4. Inmate's Testimony:    I'm not guilty.

Witness:    Kenneth McMahon, CO    Substance of Testimony:    I have no knowledge of this incident.

Witness:    N/A    Substance of Testimony:

Witness:    N/A    Substance of Testimony:

5. The inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

    Sgt. _____
    Signature / Hearing Officer

6. The following witnesses were not called  -  Reason not called

    1.  N/A _____    _____
    2.  _____    _____
    3.  _____    _____

FLYC 07-408

7. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)

The Hearing Officer finds that:    On August 12, 2007, Officer McGhee did find a pair of inmate Christopher

Gay's, WM/253514, state issued pants, soaking in a mop bucket in a storage room in the back of the Kitchen.

Such action as described in this case is not permitted at FLYC and constitutes a violation of Rule #62, Inten-

tionally Creating a Security, Safety or Health Hazard.

8. Basis for Finding of Fact:    The Hearing Officer based his findings on the testimony of the Arresting Officer

who stated under oath that he found the pants that belonged to inmate Christopher Gay soaking in a mop

Bucket as if he were attempting to dye the pants.

9. Hearing Officer's Decision:    __X__ Guilty    _____ Not Guilty

10. Recommendation of Hearing Officer:    (30) days loss of store, visitation and telephone privileges.  (30) days

Extra Duty on Second Shift.  Refer to Classification for custody review.  DOES NOT EARN GOODTIME.

_____
Signature / Hearing Officer

Sergeant Jarmal Sewell
_____
Typed Name and Title

11. Warden's Action – Date  8/27/07 _____

Approved _____

Disapproved _____

Other (specify) _____

12. Reason if more then 30 calendar days delay in action.  _____

13. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above

Named inmate on this the __28__ day of __Aug__ 20_07_ at (time) _5:45_ (am / pm).

_____    _____
Signature / Serving Officer / Title    Inmate's Signature and AIS Number

Annex C to AR 403  (Page 3 of 5

EXHIBIT 14

OFFICER, McNabb. When I arrived at Frank Lee. You Processed me in. How many Pairs of Pants was I Pacelaed? In Which I Signed on Inventory sheet too.

~~Ficer McGhee.~~ The Night of 8-12-07 The Night I left Frank lee. How Many Pairs of Pants Did I have?   3

Ficer. McGhee. What color was the Pants That You Found?

Ficer McGhee. The Evning I work in from 11:00pm Till 6:00am which is Your name Asked the 2nd Shift Kitchen Workers work off. You then Telling Inmates that Do To Inmates Count at Count. Tell The 2nd Turn In needed? An Officer Is Present.

Yes.

Ficer McGhee. The Evning That Im Accused of [illegible] was Present Offside The Kitchen Door [illegible] Evining

NO.

Ficer McGhee. The Evning That Im Accused of This Morning Didnt I Go To Water Your on [illegible] of Closet Then In The Water. Wrung out J Mops. Then [illegible] Door off. Then You Pated Me Down Then I left.   Yes

Ficer McGhee. Isnt It True that The [illegible] Room Kleaners Is The [illegible] to Put Away The Mop Buckets?   NO

*Irrelevent*

fficer, McGhee, how many inmates have Access to Closet?

*I don't know*

Filer, McGhee. Isn't The Main Administrative Have Beside
he Closet?

---

*Irrelevent*

fficer McMann Don't I volunteer The Whole 1st shift
taking care of Native American Grounds? And work hard at
t?

*Not A$ Hearing — Has no knowledge*

m A Cleaner. The Kitchen steward Gets My supplies
for me. I ann have Access to cleaning stuff.

*I don't know*

I've got 1st 2 months til I go home.

I've got 5 ... ... Born BABY,

I was Going to The nurse in 3day ... to work at the nurse

I was Going to work ... a 3 ... months.

My Mom owns a law firm in ... ... ...
...en women. It would help her out.

Why would I ... ... for boys?