IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DANIEL GAY, | ) | |
| AIS  #253514, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-1012-MHT |
| | ) | [WO] |
| | ) | |
| WINDOM McGHEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Christopher Daniel Gay ["Gay"], a state inmate,

challenges actions taken against him during his incarceration at the Frank Lee Youth

Center.  Gay names correctional officers Windom McGhee and Tracy Dunnican, warden

Levan Thomas, and associate correctional commissioner James DeLoach as defendants in

this cause of action.  Gay seeks declaratory and injunctive relief for the alleged violations

of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing

each of Gay's claims for relief.  Pursuant to the orders entered herein, the court deems it

appropriate to treat this report as a motion for summary judgment.  *Order of January 7,*

*2008 - Court Doc. No. 10*.  Thus, this case is now pending on the defendants' motion for

summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Gay is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an

element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier

5

of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Gay fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III. DISCUSSION

During August of 2007, Gay was assigned to work in the kitchen at the Frank Lee Youth Center. Sometime during the first week of the aforementioned month, Gay "approached [warden Thomas] concerning his child being hospitalized and stated that he was unable to communicate with his wife [using the inmate phone system] due to her having a cell phone.  [Thomas therefore] allowed [Gay] to use the state line to call his wife." *Defendants' Exhibit 2 (Affidavit of Levan Thomas) - Court Doc. No. 8-3* at 1.  On August 12, 2007, defendant McGhee discovered a pair of state-issued pants in a mop bucket in the storage area of the kitchen. *Defendants' Exhibit No. 3 (Affidavit of Windom McGhee) - Court Doc. No. 8-4* at 1.  "The pants appeared to have been soaked in kool-aid, because they had a bluish red tint color." *Defendants' Exhibit No. 4 (Affidavit of Tracy Dunnican) - Court Doc. No. 8-5* at 1.  An investigation revealed the laundry number stamped on the pants corresponded with pants "issued to inmate Christopher Gay...." *Id.* Upon receiving "the information concerning the dyed pants (potential escape device) bearing inmate Gay's laundry number, [warden Thomas] immediately had [Gay] transfer[red] from Frank Lee" to a more secure prison, Draper Correctional Facility. *Defendants' Exhibit 2 (Affidavit of Levan Thomas) - Court Doc. No. 8-3* at 1.

Based on the findings made during the investigation of the dyed pants, defendant McGhee initiated disciplinary action against Gay for violation of Rule #62, intentionally creating a security, safety or health hazard.  On August 16, 2007, Gay received completed

7

notice of this disciplinary charge from correctional officials at the Draper Correctional Facility. *Defendants' Exhibit 5 (Disciplinary Report FLYC 07-408) - Court Doc. No. 8-6* at 5. The disciplinary action charged that "[o]n 8/12/07 you, inmate Christopher Gay ... did have a pair [of] state pants with your laundry #038 with a reddish/blue tint in a mop bucket in the mop storage area outside of the kitchen rear exit door." *Id*. at 5.

At the disciplinary hearing, Gay adamantly denied any involvement with the dyed pants. *Defendants' Exhibit 5 (Disciplinary Report FLYC 07-408) - Court Doc. No. 8-6* at 6. Gay's requested witness, officer Kenneth McMahon, advised the hearing officer he had "no knowledge of this incident." *Id*. Thus, the hearing officer did not require that officer McMahon attend the hearing as a witness. Defendant McGhee, however, testified that he "found a pair of state issued pants, soaking in a mop bucket in the Kitchen.... I[t] appeared that the pants were being dyed to change the color of them. The pants belonged to inmate Gay, who is assigned to the Kitchen." *Id*. at 6.

In light of the evidence presented at the disciplinary hearing, the hearing officer adjudged Gay guilty of violating Rule #62. The hearing officer based his finding of guilt "on the testimony of the Arresting Officer who stated under oath that he found the pants that belonged to inmate Christopher Gay soaking in a mop Bucket as if he were attempting to dye the pants." *Id*. at 7. The sanctions imposed upon Gay for this disciplinary infraction included loss of store, visitation, and telephone privileges for 30 days and referral for

review of custody classification.  *Id*.

## A.  The Due Process Claims

1.  <u>Failure to Comply with Administrative Regulation</u>. Gay maintains that the defendants deprived him of due process when they initially provided him with an incomplete disciplinary report – specifically, he contends, line 5 regarding service had not been completed, in violation of the administrative requirements set forth in the regulation of the Alabama Department of Corrections which governs disciplinary proceedings.[2] However, the alleged violation of the departmental regulation does not assert a violation of plaintiff's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).

2. <u>Incomplete Report, Insufficient Evidence and Denial of Witness</u>. Gay argues that the defendants deprived him of due process during the disciplinary proceedings because (i) the initial copy of the disciplinary he received had not been completed, (ii) the evidence presented at his disciplinary hearing did not support a finding of guilt, and (iii) the hearing officer refused to call his requested witness to testify at the disciplinary hearing.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of

---

[2]The evidentiary materials submitted by the defendants demonstrate that on August 16, 2009,  Lt. McCray served Gay with a copy of the disciplinary report which contained all requisite information and Gay signed the document acknowledging receipt of the report. *Defendants' Exhibit 5 (Disciplinary Report FLYC 07-408) - Court Doc. No. 8-6* at 5.

his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the

normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).   Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon the inmate.   *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").   Thus, the deprivations imposed upon Gay based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."   *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.   This court must therefore determine whether the actions about which Gay complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.   *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

11

(1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry to this case, the court concludes that the temporary loss of privileges and mere referral for classification review "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Id.* at 484.  Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is without merit, and, therefore, summary judgment is due to be granted in favor of the defendants on the due process claims.

Moreover, assuming *arguendo* that the sanctions imposed upon Gay warranted the protections of due process, Gay remains entitled to no relief.  In *Wolff*, the United States Supreme Court determined that in the context of a prison disciplinary proceeding the Due Process Clause requires three procedural protections which include (1) advance, written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Furthermore, at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985).  The law is well settled that it is not the function of this court to assume the task of retrying prison disciplinary disputes and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence.  *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619 (1982).

A thorough review of the disciplinary report demonstrates that the disciplinary proceedings on the charged rule violation comported with all of the requirements of *Wolff*.

13

Correctional officials furnished Gay with advance, written notice of the charge against him, allowed him the opportunity to call relevant witnesses as consistent with correctional policy and present documentary evidence in his own behalf, and provided written statements by the fact finder of the evidence relied on and the reasons for the disciplinary action. Additionally, ample evidence supported the decision of the hearing officer. Nothing more is required by the Constitution. It is therefore clear that Gay received all the process to which he was due in the disciplinary proceedings.

### B.  The Equal Protection Claim

Gay contends defendant McGhee committed "racial discrimination" when he ordered Gay, a white inmate, to "pick up ... cigarette butts" but did not issue the same order to black inmates standing with Gay. *Plaintiff's Complaint - Court Doc. No. 1* at 3 ("I was the only inmate picked out of a crowd of black inmates [ordered] to pick up ... cigarette butts.").

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of*

14

*Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held

unconstitutional solely because it results in a ... disproportionate impact....  Proof of ...

discriminatory intent or purpose is required to show a violation of the Equal Protection

Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429

U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as

volition or intent as awareness of consequences.  It implies that the decision maker ...

selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,'

its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts

v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez

v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of

treatment or even arbitrary administration of state powers, rather than instances of

purposeful or invidious discrimination, is insufficient to show discriminatory intent.

*McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

     Since this case is before the court on a properly supported motion for summary

judgment from the defendants, Gay bears the burden of producing evidence which would

be admissible at trial sufficient to show that the action of defendant McGhee resulted from

intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The

plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat

summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his]

position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendant.  *Anderson*, 477 U.S. at 249.

Defendant McGhee denies that he undertook any action against the plaintiff due to his race.  Moreover, the undisputed evidentiary materials before the court establish that the actions of defendant McGhee occurred in his effort to ensure compliance with applicable rules and regulations.  Other than the plaintiff's self-serving, conclusory allegation that defendant McGhee violated his equal protection rights, the record is devoid of any admissible evidence that this defendant acted in an intentionally discriminatory manner.  Summary judgment is therefore due to be granted in favor of the defendants on the equal protection claim.

### C.  Derogatory Comments

Gay complains that defendant McGhee "made [derogatory] racial remarks at me [during] the time I was at Frank Lee Youth Center."  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S.

40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981). The statements about which the plaintiff complains, standing alone, do not violate the Constitution. *Cf. Paul v. Davis*, 424 U.S. 693 (1976). Threatening, derogatory or abusive comments made by a correctional officer to an inmate do not rise to the level of a constitutional violation. *Sepulveda v. Burnside*, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (reference to plaintiff "as a 'snitch' in the presence of other inmates" does not rise to the level of a constitutional violation); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights); *McFadden v. Lucas*, 713 F.2d 143; 147 (5th Cir. 1983) (threatening demeanor of officers undertaken "to enforce reasonable security needs are not violative of a prisoner's constitutional rights."); *see also Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973). Thus, the derogatory comments about which Gay complains, although not condoned by the court, fail to demonstrate that defendant McGhee deprived him of any protected right, privilege or immunity. Consequently, this claim entitles Gay to no relief.

### D. Lack of Grievance Procedure

Gay maintains that the defendants violated his constitutional rights due to their failure to provide a grievance process for inmate complaints. *Plaintiff's Complaint - Court Doc. No. 1* at 3. In the context of a prison setting, "an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986) (citations

omitted).  "A prison grievance procedure is a procedural right only, it does not confer any

substantive right upon the inmates.  Hence, it does not give rise to a protected liberty

interest requiring the procedural protections envisioned by the fourteenth amendment."

*Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568

F.Supp. 8, 10 (N.D. Ill. 1982).  Thus, the failure to provide an inmate grievance procedure

provides no basis for relief in this cause of action.  *Brown v. Dodson*, 863 F.Supp. 284

(W.D. Va. 1994); *Azeez, supra*.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 8, 2009 the parties may file objections to

this Recommendation.  Any objections filed must clearly identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive

or general objections will not be considered by the District Court.  The parties are advised

that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 26th day of August, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

19